VIRGINIA D. SHAW ET AL. v. MAURY WARD ET AL.

(Filed 13 March, 1918.)

**Limitation of Actions — Trusts — Slaves — Title — Possession — Reentry — Ouster.**

> Title to lands may be conveyed in trust to the use of those who may not lawfully hold it *sui juris*, and the statute of limitations will not begin to run against the remainderman in a devise in trust for the support of certain named slaves for life, until the death of the last survivor of them, in favor of their heirs or assigns; and were it otherwise it would require a reëntry and ouster in order to set the statute in motion, the claimants being in possession under the will. The date of the emancipation of slaves discussed by CLARK, C. J.

APPEAL by defendants from *Stacy, J.,* at August Term, 1917, of DUPLIN.

Timothy Newkirk, in his will probated in Duplin in October, 1859, among other devises provided: "I give and bequeath to my friend, John D. Powers, my plantation known as the 'Wells' place, to be used for the occupancy, support, and maintenance of certain negroes which I have conveyed to said Powers by and of gift for and during the term of the natural life of said negroes. At their decease my will and desire is that said plantation belongs to the children of said John D. Powers by his present wife, Francenia C., except forty acres around the dwelling of John Q. A. Boney on which he at present resides. I hereby bequeath said forty acres of land to the children of said Boney."

Said negroes were named in the conveyance to Powers referred to in said devise and were named Cass, Flora, and Swan. They were slaves at the time the will was probated and from that time on remained in possession and occupancy of the land. Swan Newkirk, the survivor of them, died in 1915, whereupon proceedings were immediately instituted by the plaintiffs who hold the title which they claim then devolved upon the children of John D. Powers and his wife, Francenia C., by the terms of said will.

The defendants are Timothy H. Newkirk, who claims as the heir of Swan Newkirk, and the other defendants, Maury Ward and C. C. Vann, are purchasers under a deed from Swan Newkirk executed in 1907.

Verdict and judgment for the plaintiffs. Appeal by defendants.

*Stevens & Beasley, Henry E. Faison, H. D. Williams, and E. R. Preston for plaintiffs.*

*George R. Ward and John D. Kerr, Sr., for defendants.*

CLARK, C. J. Three actions were brought, as each of the defendants claimed to hold in severalty a part of said tract. But as the same question

was involved in all three actions the court, in the interest of justice and in its discretion properly consolidated the actions into one.

The contention of the defendants is that inasmuch as Cass, Flora, and Swan were slaves at the time of the probate of the will of Timothy Newkirk, their former master, that neither of them could take or hold under the will of Timothy Newkirk, and that therefore their possession of the land was adverse after emancipation, not only as to John D. Powers, but to the remaindermen under said will, and therefore, the plaintiffs' cause of action was barred by the statute of limitations.

We can not agree with the contention that because slaves could not hold property that a devise of these premises to John D. Powers, trustee, to hold the same for their occupancy, support, and maintenance was void. If it had been, it would have been void prior to emancipation, and on the occurrence of that event the said Cass, Flora, and Swan would have become tenants at will of John D. Powers and could not make their possession adverse except by a surrender of their occupancy and a re-entry and assertion of adverse possession.

But it is not true that a trust is void because its beneficiaries are *non sui juris.* There are too many instances upheld by the courts of devises which have been made by eccentric testators of property to trustees to be held for the support and maintenance of dumb animals, such as favorite dogs or cats or horses or trusts for the support of idiots or other incompetents, and even for the support of aliens in those States where they can not own realty, to require a citation of authorities that the fee simple is in the trustee for the purpose of the trust, and that the statute of limitations cannot run against him by reason of the occupancy of the property when so directed, or receipt of the proceeds by the beneficiary; still less against the remaindermen, whose title, as in this case, accrues only after the expiration of the trust. This trust was valid prior to the emancipation and became none the less so because that event made the beneficiaries *sui juris.*

In this case we have the anomaly that all three of the defendants are claiming under the survivor of the beneficiaries in said trust, one of them claiming by descent and the other two by conveyance. They can have no greater rights than he had.

The learned judge properly told the jury that the *cestuis que trustent* who were in "occupancy" only under the will and not in legal "possession" could not set the statute in motion unless they had disavowed the trust, left the premises and reëntered claiming adverse possession. Not having done this, they were at no time subject to action and the statute did not begin to run until the death of the survivor. As counsel stated, this is a novel case, and it may be that the defense is presented "To see how it would strike the Court."

13—175

It is not, in the view we take of it, material at what precise date slavery ceased to exist in North Carolina, but as it is discussed in the brief, it may be well to recall as a matter of history that on 17 October, 1865, the convention of this State adopted an ordinance abolishing slavery, which was submitted to the people and ratified at the polls 7 November, 1865, since which date involuntary servitude except for crime, has had no existence in North Carolina. Furthermore, the Thirteenth Amendment to the United States Constitution, which abolished slavery throughout the Union, was ratified and officially proclaimed as taking effect from 18 December, 1865. As a matter of fact, after the proclamation of President Lincoln of 1 January, 1863, slavery ceased everywhere within the lines of the Union Army, including that part of North Carolina which was in the occupation of the Union forces. It ceased in effect in the rest of this State after the surrender of Lee and Johnston, but of course this had no legal efficacy until the amendments to the State and Federal constitutions at the dates above named. After the surrender of Johnston, 2 May, 1865, the employers of the State generally, if not universally, paid wages to the former slaves.

Under the act of Congress known as the "Reconstruction Act" (which denied to the United States Supreme Court any power to pass on its validity, *ex parte McCardle,* 74 U. S., 506), General E. R. S. Canby, "Commanding District No. 2," (North and South Carolina), issued his proclamation for the election on 17 October, 1867, of members of a State Convention for this State, at which time, two years after Emancipation, the negroes voted for the first time. The convention met in January, 1868, and the Constitution made by it was ratified at the polls at an election 21, 22, and 23 April, 1865.

The Fourteenth Amendment to the United States Constitution, which made all persons "born or naturalized in the United States," and subject to the jurisdiction thereof, citizens of the Union and of the State, was proclaimed ratified 28 July, 1868, and the Fifteenth Amendment, which prohibited discrimination in suffrage "on account of race, color, or previous condition of servitude," was proclaimed ratified 30 March, 1870.

No error.